CÁDIZ, PETITIONER AND APPELLEE, *v.* JIMÉNEZ, INTERVENOR AND APPELLANT.

APPEAL from the District Court of Humacao in a Partition Proceeding.

No. 1887.—Decided July 10, 1919.

PARTITION—LIQUIDATION—CONJUGAL PARTNERSHIP—SEPARATE PROPERTY—COMMU-
NITY PROPERTY—CONSTRUCTION.—The ''capital'' referred to in section 1334 of the Civil Code is the separate property of the respective spouses in so far as the same can be identified, traced, or satisfactorily shown to have been blended with the common assets. Nothing is said about reimbursement of either spouse for separate property owned at the time of marriage and subsequently lost through mismanagement by the owner, or otherwise, regardless of whether or not the same had been mingled with the common fund. Beyond the mere identification, inventory and allotment of separate property, the law does not contemplate liquidation and settlement of capital that

has never figured in the business of the conjugal partnership. The mere disappearance of the separate property of the husband, coupled with the subsequent acquisition of other property does not warrant the conclusion that the separate property had been converted into common. To assume this would nullify the presumption that all property acquired by either of the spouses during marriage is community property.

The facts are stated in the opinion.

*Mr. Lorenzo Jiménez García* for the appellant.

*Mr. Manuel Tous Soto* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Quintiliano Cádiz died intestate leaving a widow and a natural son, who was adjudged to be the sole and universal heir. A commissioner appointed by the district court to partition the estate found that Cádiz was married in July, 1901, and that the wife brought nothing to the marriage; that Cádiz, prior to his marriage, had acquired two houses which he sold on June 14, 1902, for $3,500, of which $2,879.67 was represented by encumbrances and the remainder, $620.33, was received by the vendor in cash; that Cádiz contributed $11,600.67 to a mercantile partnership organized in April, 1901, and dissolved on June 14, 1902, with an allotment to Cádiz amounting to $15,953.60, there being nothing to show whether the increase accrued during the marriage or prior thereto. The property inventoried, all of which was acquired during marriage, was appraised at $2,678.06. Deducting this amount from the sum of $12,287, said to have been contributed by Cádiz to the conjugal partnership, the commissioner concluded that the community was indebted to the Succession of Cádiz, over and above all assets, in the sum of $9,608.94. On this theory the entire estate was allotted to the natural son, with a finding for a balance due him of $9,608.94, to be satisfied out of any ganancial assets that subsequently might be found.

On objection by the widow the natural son agreed to certain amendments and the court thereupon approved the report as amended and decreed a partition of the estate in accordance therewith.

From this decree the widow appeals.

Just what the amendments were is not clear and the appellant would have small reason to complain if the action of the lower court should be affirmed without discussion of the merits. The original report, however, proceeds unmistakably on the theory that "whatever property had been acquired before marriage by either of the spouses and at the time of marriage was in the possession of such spouse constitutes an individual credit that must be acknowledged as a charge on the property left by Quintiliano Cádiz at his death." The sole assignment of error specifies a holding sustaining the ruling of the commissioner that the heir of Cádiz should be reimbursed in the sum of $12,287 as the amount of an alleged contribution to the marriage, to that end allotting to the said heir the whole of the community property. Whatever the amendment may have been it does not appear, and appellee does not suggest, that it amounted to an abandonment of the theory on which the original report was made, or that the result was such as to convert the contention of appellant into a mere moot question; but, apparently conceding that the theory of the commissioner is supported by the decree of the court, seeks to sustain both on the merits. The argument is based on section 1334 of the Revised Civil Code, which provides that "after the debts, charges, and obligations of the partnership have been paid the capital of the husband and of the wife shall be liquidated and paid in so far as the inventoried estate may reach."

Contrasting this section with its prototype, article 1423 of the Spanish Code, appellee concedes at the outset that the two provisions differ to such an extent that it is useless to invoke the opinions of the commentators on the Spanish Civil Code. We need not dwell, therefore, on the various modifications made in revision, nor on the consequent need for caution in the matter of interpretation. It will suffice to say that the changes so made tend to remedy in a measure some of the defects mentioned by Manresa in

his Commentaries, Volume IX, pages 703 to 727, through the adoption of a few characteristic features of the community system as developed in the codes and judicial decisions of certain States.

Section 1322 of the Civil Code expressly provides that—

"All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife."

Property acquired by either of the spouses during marriage is presumed to have been purchased with community funds. *Longpré* v. *Registrar of San Juan,* 24 P. R. R. 835; *Delgado* v. *Registrar,* 23 P. R. R. 654.

The following doctrine is in harmony with the local law:

"When either spouse sets up the claim that property conveyed to him is separate, and seeks to establish this claim by the recitals of fact inserted in the contract to convey, or the conveyance to him, the other spouse and the community should be regarded as third persons to the transaction. The husband as owner and manager of his separate estate should be regarded as one person; as master and manager of the common fund, as another person; the wife and her separate estate should be regarded as still another person; the recitals showing a separate interest are inserted by one who is acting, for the time being, in opposition to the rights and interests of the common fund, and in the interest of the separate estate of either the husband or the wife.

"The husband is the master and manager of the common fund, and all property conveyed to him is *prima facie* common, and is actually common if acquired by him by any means, except through the defined sources of separate property.

"If the husband may change these rules of law and prove his separate right by having his grantor insert recitals of fact showing a separate acquisition, then he has, in his hands, the power to practically defeat the will of the State, and repeals its laws, by mere extrajudicial unsworn statements of fact inserted in a conveyance to him. The law places him in a position of trust; no rule should be adopted or enforced which makes it easy for him to violate his trust and defraud his wife." McKay On Community Property, p. 338, secs. 274–75. See also Civ. Code, secs. 1186, 159, 161, 1327.

On general principles it has been said that—

"When separate property is blended with common, the mass becomes common; but the question remains whether the owner of the separate property lost by blending should not be reimbursed. The separate property is lost because it cannot be traced in, and separated from, the mass; but when the mass is actually increased in value by an amount capable of definite proof, it is a hard rule which denies compensation, and the hardship is emphasized when the property lost by blending belongs to the wife; in general, the blending is not her fault but the husband's. In Texas the right of the husband to compensation for separate property lost by blending has been denied; this is unfair as a *universal* rule but when no computable value is added to the common fund by the blending, there would be no basis for a judgment unless the blended amounts to a conversion by the community as when the wife's property is taken by the husband and blended with the common fund." McKay, p. 419, sec. 362.

This question is largely settled for us by section 1334 of the Civil Code, *supra.* The "capital" referred to in that section is the separate property of the respective spouses in so far as the same can be identified, traced or satisfactorily shown to have been blended with the common assets. Nothing is said about reimbursement of either spouse for separate property owned at the time of marriage and subsequently lost through mismanagement by the owner, or otherwise, regardless· of whether or not the same had been mingled with the common fund. Beyond the mere identification, inventory and allotment of separate property, the law does not contemplate liquidation and settlement of capital that has never figured in the business of the conjugal partnership. The mere disappearance of the separate property of the husband, coupled with the subsequent acquisition of other property, does not warrant the conclusion that the separate property has been converted into common. To assume this would nullify the presumption that all property acquired by either of the spouses during marriage is community property. That is self-evident.

In the case at bar the deeds to the real estate acquired during marriage do not even mention the source of the purchase price. Cádiz, on dissolution of the mercantile partnership above mentioned, seems, as a matter of fact, to have received $47.58 in cash, and, in order to secure the fulfilment of obligations assumed by him in the instrument of dissolution, pledged a quantity of tobacco valued at $4,470.87 and executed in favor of his partner in the business a mortgage on the two houses first above mentioned.for the sum of $2,879.67. On the same day he sold the real estate last mentioned, subject to the mortgage, for $620.33. This added to the $47.58, the cash proceeds of the dissolution, makes a total of $667.91. There is nothing to show that anything beyond this was ever realized out of the private property in question.

In any event, the mercantile partnership was organized some three months before the marriage and dissolved a year later. The instrument of dissolution shows on paper an increase of nearly $5,000 in the capital contributed by Cádiz, most of which must have accrued, if at all, during marriage. The selling price of the two houses, including the mortgage executed on the day of the sale to secure a personal obligation of even date, was $3,500. One of these houses was purchased in 1899 for 3,000 pesos, 2,000 pesos of which were paid in cash and the balance secured by mortgage. This mortgage was canceled after marriage. The cost of the other house does not appear, but at the time both were sold the same represented $2,000 out of the $3,500, at which the two were valued. This was within less than a year after the date of the marriage.

If the husband is to be reimbursed out of the community property to the amount of the separate property owned by him at the time of marriage and subsequently disposed of, then why, in the case at bar, such reimbursement, in so far as the real estate is concerned, should be limited to the sum

of $620.53 is not quite clear. But if the actual cash received at the time of sale be the proper measure for reimbursement, then it would seem more consistent likewise to limit reimbursement for the interest in the mercantile partnership to the sum of $47.58. Certainly there is nothing to show that the husband, much less the conjugal partnership, ever received anything more than this in actual cash as proceeds of the liquidation. Even otherwise, the increase of nearly $5,000 in the capital invested in the tobacco business and the $1,000 paid to release the real estate from the mortgage existing thereon at the time of marriage were community property and as such would offset to that extent any claim for reimbursement for blended separate property of the husband.

If it had appeared that the husband had discharged his personal obligations contracted on dissolution of the commercial partnership, resumed control and disposed of the tobacco pledged to secure the same, taken an assignment of the mortgage on the real estate formerly owned by him, sold the machinery, utensils, raw materials and trademarks allotted to him, depositing and checking against the proceeds or reinvesting the same, in such a way as to render identification thereof impossible or impracticable, or otherwise conducting the liquidation of assets without discrimination between his management thereof and his administration of the conjugal partnership, then some basis might be found for liquidation and payment of the "capital" so represented. Even a continuation of the business under separate and distinct management, in certain circumstances, might have created a similar situation.

But in the total absence of any such showing there is nothing to liquidate, and therefore nothing to be paid out of the community assets.

What has been said should be understood as referring only to the real estate and to the commercial partnership.

Inasmuch as the case must be remanded, we express no opinion at this time in regard to the status of a certain insurance policy classified below by consent rather than by any ruling either of the commissioner or of the district court.

The decree appealed from must be reversed and the case remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.